[Cite as *State v. Abaya*, 2026-Ohio-2160.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY

State of Ohio                                            Court of Appeals No.  WD-25-051

      Appellee                                      Trial Court No.  23 CR 28

v.

Amanda C. Abaya                                    **DECISION AND JUDGMENT**

      Appellant                                     Decided: June 9, 2026

* * * * *

Paul A. Dobson, Wood County Prosecuting Attorney, and
Kristofer  Kristofferson, Assistant Prosecuting Attorney, for appellee.

Dan Weiss, for appellant.

* * * * *

**SULEK, J.**

{¶ 1} Appellant, Amanda C. Abaya, appeals from the August 7, 2025 judgment of

the Wood County Court of Common Pleas convicting her of one count of aggravated

possession of drugs and one count of possession of a fentanyl-related compound and

sentencing her to a prison term of a minimum four years and a maximum of six years as

well as a prison term of fifteen months, to be served concurrently. Abaya's single assignment of error challenges her sentence because she claims that her right of allocution was violated. Because the trial court provided both Abaya and her counsel the opportunity to make statements prior to imposition of the sentence and did not impede Abaya's right to speak in support of mitigation, we affirm.

## I. Facts and Procedural History

{¶ 2} On February 2, 2023, the Wood County Grand Jury indicted Abaya on one count of aggravated trafficking in drugs in violation of R.C. 2925.03(A)(2) and (C)(1)(d), a felony of the second degree (count 1); one count of aggravated trafficking in drugs in violation of R.C. 2925.03(A) and (C)(1)(c), a felony of the second degree (count 2); trafficking in a fentanyl-related compound in violation of R.C. 2925.03(A)(2) and (C)(9)(c), a felony of the fourth degree (count 3); and possession of a fentanyl-related compound, a violation of R.C. 2925.11(A) and (C)(11)(b), a felony of the fourth degree (count 4). The charges stemmed from an incident on April 9, 2022, when Abaya was pulled over for weaving while driving and the police discovered she possessed two tennis balls containing methamphetamine.

{¶ 3} Abaya initially pleaded not guilty. Her attendance at subsequent hearings was intermittent. She failed to appear for several hearings and multiple scheduled meetings with the probation department. Her bond was revoked twice during the proceedings. Abaya eventually withdrew her not-guilty plea and entered a guilty plea to counts 2 and 3 pursuant to a plea agreement with the State. In exchange, the State agreed

2.

to dismiss counts 1 and 4 at sentencing. The trial court accepted Abaya's guilty plea following a Crim.R. 11 colloquy.

{¶ 4} At the outset of the sentencing hearing, held on August 4, 2025, Abaya informed the court that she had recently suffered a significant head injury in a motorcycle accident, a portion of her skull had been removed, she was scheduled for surgery to repair her skull on August 17, 2025, and she would need to be in the hospital for two to seven days. The court held a recess in chambers and then resumed sentencing.

{¶ 5} Following the recess, the court noted on the record that it would be proceeding with sentencing that day. After inquiring whether there were any changes to the presentence investigation report (PSI), the court requested statements in mitigation as follows:

> THE COURT: …[Abaya's counsel], anything in mitigation, please?
>
> [ABAYA'S COUNSEL]: Yes, Judge. As the Court is aware she was in a horrific motorcycle accident, her skull, part of it, is frozen at the hospital.
>
> …
>
> [ABAYA'S COUNSEL]: She doesn't have a terrible record. This was a very serious case. Today is her son's 12[th] birthday.
>
> The State originally had recommended the minimum sentence, it's a mandatory sentence. I think – I'm asking you to consider that in light of what she's been through, what she's going to go through in the future. I think this has taught her – and still teaching her quite a lesson. So I would ask you to take all that into consideration. Thank you.

The trial court then heard from the State before asking Abaya whether she would like to make a statement, as follows:

3.

THE COURT: … Ms. Abaya, you've heard the statements of your counsel as well as the State, anything you'd like to add or tell the Court, ma'am?

[ABAYA]: Is there any way I can still see my doctor? Is the jail able to take me out so I can get my skull back? Is the jail able to take me?

THE COURT: Anything that – this is sentencing.

[ABAYA]: I'm terrified, I'm very terrified without that part of [my] skull.

THE COURT: That is very understand[able]. But ma'am, we're here for sentencing.

[ABAYA]: I understand.

The court then began making its findings with respect to Abaya's sentence, discussing the considerations under R.C. 2929.11 and R.C. 2929.12, during which Abaya interrupted as follows

THE COURT: … The Court does not consider race, ethnic background, gender or religion of the defendant. And it is left to the discretion regardless of any recommendation ---

[ABAYA]: Even medical?

THE COURT: It is left to the discretion of the Court to determine the most appropriate sanction utilizing those purposes and principles…. You have not been compliant with the Court orders. You've failed to appear for the pre-sentence investigation. And certainly there have been multiple failures to appear, so [your] behavior while you've been on bond has been noncompliant.

[ABAYA]: Your Honor, even if you guys can pick me right up at the hospital –

[THE COURT]: Okay. Well, ma'am, this has been going on for well over two years.

The court then continued to discuss the many times that Abaya failed to appear for random drug screens, her positive drug test, her removal of an ankle monitor, and her

4.

failure to turn herself in after reporting that she planned to do so. Based on those factors, the court imposed a prison term for both counts.

{¶ 6} Abaya filed a timely appeal of her sentence.

## II. Assignment of Error

{¶ 7} Abaya asserts the following assignment of error for review: "The trial court erred when it failed to comply with Criminal Rule32(A)(1) and appellant's sentence should be vacated."

## III. Law and Analysis

{¶ 8} In her assignment of error, Abaya contends that her right to allocution was violated. She contends that when she began to speak on her own behalf, the trial court "abruptly stopped [her] from fully and thoroughly speaking in mitigation."

{¶ 9} Crim.R. 32(A)(1) provides that, "[a]t the time of imposing sentence, the court shall … [a]fford counsel an opportunity to speak on behalf of the defendant and address the defendant personally and ask if he or she wishes to make a statement in his or her own behalf or present any information in mitigation of punishment."

{¶ 10} "The right to allocution is 'much more than an empty ritual: it represents a defendant's last opportunity to plead [their] case or express remorse.'" *State v. Champeau*, 2024-Ohio-4602, ¶ 12 (2d Dist.), quoting *State v. Green*, 90 Ohio St.3d 352, 359-360 (2000). "Although the right of allocution is absolute, it is not unlimited…. A trial court can limit a defendant's allocution if it concerns extraneous matters unrelated to the sentence and is not about mitigation." *State v. Brockington*, 2019-Ohio-1812, ¶ 11 (6th Dist.), quoting *State v. Hofmann*, 2004-Ohio-6655, ¶ 32-33 (6th Dist.).

5.

{¶ 11} To violate a defendant's right to allocution, the trial court's statements must actually prevent the defendant from speaking in support of mitigation, and "[i]nterruptions by the trial court during the allocution process do not necessarily result in prejudicial error requiring reversal." *Id.*, citing *Hoffman* at ¶ 34; *State v. Turner*, 2019-Ohio-934, ¶ 33-34 (7th Dist.); *State v. Cline*, 2015-Ohio-4085, ¶ 13-15 (8th Dist.). To determine whether a trial court's interruption violated an appellant's right to allocution, appellate courts have considered whether appellant's counsel made a statement, the length and content of the trial court's statements, whether the appellant continued to speak after the trial court's interruption, and whether there was any indication that the appellant had more to say following the trial court's interruption. *See, e.g., State v. Roach*, 2016-Ohio-4656, ¶ 16 (7th Dist.) (holding that there was no prejudicial error in trial court's interruption of appellant's allocution where the trial court's interruption was a brief comment regarding the appellant's statement, there was no indication that the appellant had more to say, and appellant's counsel made a statement on appellant's behalf); *State v. Servantes*, 2023-Ohio-2116, ¶ 52-53 (11th Dist.) (no indication appellant had more to say and appellant's counsel spoke in support of mitigation); *State v. Maston*, 2021-Ohio-1975, ¶ 11-12 (2nd Dist.) (appellant remained steadfast in denying blame despite trial court's interruptions and appellant's counsel spoke on appellant's behalf); *Turner*, 2019-Ohio-934 at ¶ 32-34 (appellant continued to speak following trial court's interruption). Further, as other appellate courts have noted, transcripts do not always indicate whether the trial court actually interrupted the appellant or just began speaking after the appellant was done talking. *Turner* at ¶ 34, citing *Roach* at ¶ 16. ("Appellant

6.

may have been trailing off or somehow giving the impression he was finished. A trial transcript is not like a script for a play and does not contain indicators of demeanor or measures of time between pauses.").

{¶ 12} Here, Abaya's counsel, on the invitation of the trial court, gave a statement on mitigation, referring specifically to Abaya's skull injury and medical issues. The trial court also expressly invited Abaya to speak on her own behalf. In response, Abaya asked several logistical questions about obtaining medical treatment while incarcerated, requesting information about how she would arrange transportation to the hospital and her medical appointments. In response to those questions, the trial court reminded Abaya that the hearing was regarding sentencing in an attempt to redirect Abaya to speak regarding mitigation. Abaya then expressed her fear about the serious nature of her medical condition. The trial court confirmed that Abaya's fear was understandable and again attempted to redirect Abaya to speak regarding mitigation. In response, Abaya merely stated that she understood without making any additional statements. The record does not indicate that Abaya had anything further to say at that time. Later in the hearing, however, she interrupted the court, asking for more details about the timing of her treatment in relation to her prison term, demonstrating that Abaya had not been intimidated into silence by the trial court's statements during her allocution. In short, both Abaya and her counsel made statements calling attention to Abaya's medical condition and her concerns about obtaining the appropriate treatment while incarcerated, the court repeatedly directed Abaya to talk about her sentence, and there is no indication that Abaya had more to say about her sentence. Accordingly, even if Abaya's logistical

7.

questions about obtaining medical treatment and her expression of fear about her medical condition are construed as relevant to mitigation, there is no indication that the trial court's statements prevented Abaya from exercising her right to allocution.

{¶ 13} Abaya's assignment of error is found not well-taken.

### IV. Conclusion

{¶ 14} Based on the foregoing, the judgment of the Wood County Court of Common Pleas is affirmed. Pursuant to App.R. 24, costs of this appeal are assessed to Abaya.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, P.J.
_____
JUDGE

Gene A. Zmuda, J.
_____
JUDGE

Charles E. Sulek, J.
CONCUR.
_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.

8.